tion of 1921 in the Grace case or with the views expressed herein.

For the reasons assigned, our original judgment is reinstated and affirmed at the cost of plaintiff, appellee.

O'NIELL, C. J., does not take part.

**38 So.2d 72**

**STATE v. WILDE.**

**No. 38667.**

Nov. 8, 1948.

Rehearing Denied Dec. 13, 1948.

Maurice B. Gatlin and Harry R. Hill, both of New Orleans, for appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., and Herve Racivitch, Dist. Atty. and Charles Janvier, Asst. Dist. Atty., both of New Orleans, for appellee.

FOURNET, Justice.

The defendant, Langburn A. Wilde, is appealing from his conviction of the crime of forgery on two counts—the first charging him with forging an instrument on October 5, 1946, purporting to be a bill of sale for a Studebaker automobile and the second charging him with issuing the instrument on October 17, 1946, with intent to

defraud—as well as his sentence to serve two years at hard labor in the State Penitentiary on each count, such sentences to run concurrently. He relies, for the reversal of his conviction and sentence, on eight bills reserved during the course of his trial. In order that these bills may be properly understood and disposed of, a brief statement of the facts that were developed during the trial of the case, as reflected by the trial judge's per curiams, is necessary.

The defendant, operating under the name of the C. & W. Motor Company, was engaged in the business of buying and selling used cars. In order to finance his operations, it was necessary for him, from time to time, to obtain loans from the Mossler Acceptance Company, doing business in New Orleans as the Central Finance Company. These funds were obtained through what is known in the trade as a "floor plan," whereunder the company loaned him money on individual automobiles as they came into his possession, securing the loan with a chattel mortgage on the automobile. In accordance with the company's regulations, however, no amounts were loaned until the defendant had produced, as the indicia of his ownership of the car on which the money was being advanced, a bill of sale. The sums obtained in this manner were repaid out of the proceeds received as soon as the car was sold.

On October 5, 1946, Wilde forged what purported to be an act of sale of a 1941 Studebaker automobile from James H. Rabalais, this being the same car that he had previously sold to Rabalais on July 2. On October 17 thereafter, he presented this forged bill of sale to the company for the purpose of securing a loan of $650 thereon and he executed the usual chattel mortgage as security. Shortly thereafter, in a routine check made by a representative of the finance company, it was found that a number of the cars against which it held chattel mortgages were missing. Becoming suspicious that something had happened to them, the company filed executory process, seizing the Rabalais car while in his (Rabalias's) possession. This prosecution followed.

The first three bills of exceptions are so interrelated they will be treated and disposed of together, as was done by the trial judge. The first bill was reserved when the judge refused to order the production of all the papers, books, records, and documents of any and all kinds showing all transactions between Wilde and the finance company during the entire year 1946. Bill of Exceptions No. 2 was reserved when the trial judge refused to order the production of the documents (called for in a modified motion for a subpoena duces tecum) that would show the amount held by the finance company to Wilde's credit and any payments made to Rabalais subsequent to the date on which the information was returned against the defendant. The third was reserved when the trial judge ordered the defendant to trial despite his objection to

being tried without the production of these documents.

■ While it is true that the legislature failed to specially provide for the issuance of the subpoena duces tecum in the adoption of any act dealing with the criminal law and procedure of this state, it is, nevertheless, well within the plenary power of the court, to be exercised in the sound discretion of the trial judge, to order the production of any evidence, including books, documents, or records of a third party that is necessary and material, whether such subpoena is sought on behalf of the prosecution or the defense. See Article VII of the Constitution of 1921, Sections 28 and 83.

■ In his per curiams to these bills the trial judge states he refused to order the production of these records because they could have served no purpose other than to confuse the issues, encumber the record, and delay the trial by the examination of irrelevant documents; that the defendant did not state what he hoped to prove by these documents, and, besides, made his request so general it was impossible to identify any particular document needed. He states, further, that he made these rulings with the full explanation that if, during the course of the trial, any good reason could be advanced indicating such records should be produced to prevent a miscarriage of justice he would, at that time, order their production; but that it subsequently developed only those documents showing the

amount of money deposited with the finance company to the defendant's credit had any bearing on the case.

■ The company readily admitted the defendant had the sum of $1,250 to his credit according to its records. In fact, the transcript shows the trial judge, upon this admission, advised counsel for the defendant that the documents showing these credits would be admitted and they were, in fact, offered in evidence by the defendant.

Under these circumstances the trial judge was well within his discretion in refusing to comply with the defendant's requests and his rulings in these respects will not be disturbed.

Bill of Exceptions No. 4 was reserved when the judge permitted the state, through the examination of witnesses, to show the party defrauded by the forgery, despite the fact that the judge had previously refused to order the state to set out in a bill of particulars this party's name.

■■ In his per curiam to this bill, the trial judge points out that the defendant reserved no bill when his motion for a bill of particulars was refused. Furthermore, this court has consistently held that it is not necessary to name the party defrauded or intended to be defrauded in an indictment or bill of information charging forgery and that the defendant is not entitled to such information unless it be necessary to the proper defense of his case. State v. Gau-

bert, 49 La.Ann. 1692, 22 So. 930; State v. Ducre, 173 La. 438, 137 So. 745. Necessarily, since the gravamen of the offense is that the accused committed the forgery with the intention of defrauding, evidence showing a fraud was perpetrated on a particular party by the utterance of such instrument is relevant.

The next bill was reserved when the judge permitted the state to introduce evidence tending to show the commission of other and unrelated crimes by the accused, and particularly when he permitted the examination of Stephen Van Norman and Landry DeSoto and the introduction of the records in other cases in which this same accused is being prosecuted.

■ The general rule that evidence tending to show the accused, who is being prosecuted for a particular crime, has committed another crime wholly independent of and unconnected with that for which he is on trial is irrelevant and inadmissible even though it is a crime of the same sort, is subject to a number of exceptions. Such an exception is "When knowledge or intent forms an essential part of the inquiry." In such case "testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but

not to prove the offense charged." Article 446 of the Code of Criminal Procedure.

■ The trial judge in his per curiam states he permitted the introduction of this evidence because he considered it necessary not only to show knowledge and intent but also because the evidence disclosed this particular transaction was only one of a system of transactions to defraud the company. It is our opinion that his ruling was correct. This evidence was particularly material in this case. Wilde readily admitted he forged the instrument described in the information, but his defense was that he had not uttered the same with the intention of defrauding any one since there was a sum on deposit to his credit at the finance company in excess of the amount he received in this transaction; besides, that the loan had been made in accordance with the custom of all finance companies. In order to show his intent to defraud, an essential element of the offense of forgery, it therefore became necessary for the state to prove this intent by the surrounding circumstances and in doing so the state elicited from the witnesses testimony showing the accused had, in the short space of three weeks, obtained similar loans from the company—one through a forged bill of sale (this case), another through a stolen bill of sale, and the third through a bill of sale that had no legal efficacy—and that these loans together were for an amount far in excess of the sum deposited to his credit at the finance company.

In view of the specific provisions of our law and the jurisprudence thereunder, therefore, the defendant's elaborate briefing of the law of England and of other jurisdictions in this respect can have no force or effect; and a perusal of the decisions of this court that are relied on will readily reveal they are neither controlling nor pertinent to the particular issues in this case.

Counsel for the defendant, however, has devoted much space in his brief and much time in oral argument claiming that one of these alleged offenses testified to was not "similar" to forgery and did not "constitute the same offense" for which he was indicted, for this testimony tended to establish the violation of OPA regulations controlling the price ceiling on used cars.

On that phase of the case the record shows testimony was elicited from state witness Landry DeSoto to show that on October 28, 1946, he purchased a 1941 Ford car from the defendant for the sum of $1,-350 in cash and that he held a bill of sale in evidence of such purchase showing the consideration to be $1,087. Defendant's counsel objected to this evidence on the ground that it was immaterial and irrelevant since it was an attempt to show a crime which is not a part of these proceedings,—an OPA violation. DeSoto's testimony was not sought for the purpose of showing an OPA violation, but in order to establish the date and the time of his acquisition of the car and the further fact

that after Wilde had sold it to him he (Wilde), on the same day, obtained a loan from the company, giving this car as security.

Clearly the evidence was admissible under the exception to the general rule just above discussed. It is immaterial that the facts as testified to by the witness may have established a different and distinct crime. And if the defendant's cause was prejudiced by the jury's attention being called to the fact that this transaction was a violation of the OPA regulations, it was brought to their attention by the defendant's counsel and he cannot now be heard to complain.

Bill of Exceptions No. 6 is levelled at the trial judge's refusal to permit the defendant to question witnesses with respect to a suit pending in the civil district court between the finance company and H. A. Denmark, while Bill of Exceptions No. 7 was reserved when he refused to permit the defendant to introduce the records in a number of criminal cases involving other defendants.

The trial judge points out in his per curiam that he refused the introduction of this evidence because none of the defendants or witnesses involved in the cases were in any way connected with the crime for which the defendant was being tried. Other than the mere statement made by defense counsel in argument that these criminal cases proved the criminal court was being used as a collection agency, the defendant has failed to show what possible

connection these other cases have with his case. We think the trial judge correctly excluded such evidence, regardless of the motives that may have prompted the prosecution of the defendants in the other cases.

The last bill was reserved to the trial judge's refusal to grant the defendant's motion for a new trial. Since this motion is based on the errors alleged to have occurred in the rulings with respect to the bills just disposed of, this last bill presents nothing new for our consideration.

For the reasons assigned, the conviction and sentence are affirmed.